UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CATEGORY 5 STEEL, INC., a Washington corporation; INTERSTATE ERECTORS, INC., a Washington corporation, <br><br> Defendants. | No.: <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Associated Industries Insurance Company, Inc. ("AIIC") hereby brings this Complaint for Declaratory Judgment against Defendants Category 5 Steel, Inc. ("Cat 5"), and Interstate Erectors, Inc. ("Interstate"), and alleges as follows:

**I. NATURE OF THE ACTION**

1.1     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. § 2201 and 2202. AIIC seeks a determination that it has no duty to defend or indemnify Cat 5 under the Subject Policy identified herein with respect to claims that Interstate has alleged against Cat 5 in *Category 5 Steel, Inc. v. Interstate Erectors, Inc., Nationwide Mutual Insurance Co., Daniel L. Kelley, and Jane Doe Kelley; Interstate*

*Erectors, Inc., Counterclaimant, Category 5 Steel, Inc., Counter-Defendant*, Spokane County Superior Court, Case No. 20-2-01104-32, filed on March 23, 2020 (the "Underlying Lawsuit").

## II. THE PARTIES

2.1.    Plaintiff AIIC is a Florida corporation with its principal place of business located at 903 N.W. 65th Street, Boca Raton, Florida 33487, and conducts business in King County, Washington.

2.2.    Based on information and belief, Defendant Cat 5 is a Washington Corporation with its principal place of business located at 5120 N. Moore Road, Spokane Valley, Washington, 99216-3536.

2.3.    Based on information and belief, Defendant Interstate is a Washington Corporation with its principal place of business located at 2405 N. Dick Road, Ste. A, Spokane Valley, Washington 99212-2203.

## III. JURISDICTION AND VENUE AND CHOICE OF LAW

3.1    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the plaintiff is a citizen of a different state than all defendants.

3.2    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the cause of action occurred in this judicial district and the property at issue is situated in this judicial district.

3.3    Cat 5 seeks defense and indemnity from AIIC for the claims asserted by Interstate. This dispute is ripe for adjudication.

3.4    The Subject Policy was issued in Washington to a Washington insured, Cat 5. The Subject Policy contains endorsements to conform the policy to Washington law. Washington law governs the insurance coverage dispute in the above-captioned lawsuit.

## IV. FACTS

4.1 AIIC incorporates by reference all allegations set forth in paragraphs 1.1 through 3.4 as if fully set forth herein.

**A.   The Underlying Lawsuit**

4.2 In the Underlying Lawsuit, Cat 5 filed its Second Amended Complaint on November 23, 2020. A copy of the Second Amended Complaint is attached as **Exhibit A.**

4.3 In the Underlying Lawsuit, Interstate filed counterclaims against Cat 5 on June 19, 2020. A copy of Interstate's counterclaims is attached as **Exhibit B**.

4.4 The Underlying Lawsuit involves construction contracts between Interstate and Cat 5 on three, unrelated projects: (1) the Church on the Ridge Project in Snoqualmie, Washington ("the COTR Project"); (2) a Grocery Store Outlet in Quincy, California ("the Quincy Project"); and (3) a Grocery Store Outlet in Lake Isabella, California ("the Lake Isabella Project").

4.5 For each project, Interstate subcontracted with Cat 5, whereby Cat 5 agreed to provide steel erection. Each project was subject to a separate Subcontract Agreement, with each providing the following scope of work:

**INTERSTATE ERECTORS INC**
**SUBCONTRACT AGREEMENT**

\*   \*   \*

1. **SCOPE OR WORK.** Subcontractor shall provide all supervision, materials, labor, supplies and equipment for the work set forth below: \* \* \*

   *Specific Inclusions:*  **All labor and material to complete all Metal and Misc. install of Fabrications, Metal Decking and Bar Joist Package & Panel welding.**

4.6 Each Subcontract Agreement also included an "Appendix," which required Cat 5 to maintain CGL insurance and name Interstate as an additional insured:

**APPENDIX 1**
**Insurance**

    **1. Coverage.** Subcontractor shall procure, maintain and pay for the following insurance for a minimum period of one year following substantial completion of the Project or longer as the main contract requires:

| LIMITS/DEDUCTIBLE | COVERAGE |
|---|---|
| Commercial General Liability ("CGL") | $1,000,000 each occurrence; $2,000,000 aggregate. Aggregate limits shall apply on a per project basis. |

* * *

    **2.   CGL Forms.** CGL insurance coverage shall be based on Insurance Services Office Form 00 01 10 01 or its equivalent with an endorsement (Form CG 2503 or equivalent) requiring that the general aggregate limit of liability shall apply to this Project. Subcontractor shall obtain Additional Insured Endorsements to both its (i) CGL policy (Form CG 20 10 11 85 or a combination of ISO Forms 20 10 01 and CG 20 37 10 01 or equivalent) which includes completed operations coverage and (ii) its Commercial Automobile Liability policy (Form CA 2048, or equivalent) all of which name Prime, Contractor, Owner, and any other entity required by the Main Contract, as "additional insureds".

    4.7    Regarding the COTR project, the Subcontract Agreement was executed on February 22, 2019, and provided a contract price of $225,000.

    4.8    Regarding the COTR project, Cat 5 and Interstate agree that various change orders increased the contract amount, and that Interstate did not pay the entirety of that increased amount. Cat 5 claims Interstate failed to pay $25,070.80 to Cat 5; Interstate claims it paid all but $7,101.68.

    4.9    Regarding the COTR project, Interstate further claims that Cat 5 "failed to satisfactorily complete all of the work specified in the subcontract" and that Interstate was forced to "incur costs to complete Cat 5's contracted work on the COTR project."

    4.10    Regarding the COTR project, Interstate alleges it "incurred costs amounting to at least $25,278.50, in order to satisfactorily complete the work Cat 5 was required to perform under the subcontract."

    4.11    Regarding the COTR project, Interstate alleges that "[a]fter accounting for

Interstate['s] incurred costs to complete Cat 5's contractual obligations, Cat 5 has been overpaid by at least $17,126.50."

4.12    Regarding the COTR project, Cat 5 further alleged that Interstate "intentionally modified certain work orders from Cat 5 by removing equipment charges, increasing the labor rate from $105 to $125/hr., and adding a 10% markup."

4.13    Regarding the COTR project, Cat 5 claims that "[a]fter modifying the work orders, Interstate … transmitted them to the respective general contractors (for inclusion into change orders) as if they were genuine documents from Cat 5."

4.14    With respect to the COTR Project, Cat 5 alleges that Interstate "transmitted / published the modified work orders to the respective general contractors" between August 9, 2019, and November 25, 2019.

4.15    Regarding the COTR project, Cat 5 claims that Interstate "knew the modified work orders were false and would create a false impression that Cat 5 overcharged for its work, and in fact they did create such an impression."

4.16    Regarding the COTR project, Cat 5 claims Interstate's conduct "damaged [its] reputation" and "injured [it] in its business, trade and profession, and/or presumably will, as a natural and proximate consequence, occasion Cat 5 pecuniary loss."

4.17    With respect to the COTR Project, Cat 5 asserted claims for defamation and CPA violation against Interstate and implicitly alleged claims for breach of contract, quantum meruit, and promissory estoppel.

4.18    Regarding the COTR project, Interstate asserted counterclaims against Cat 5 for breach of contract and unjust enrichment.

4.19    Regarding the Quincy project, the Subcontract Agreement was executed on August 8, 2019, and provided a contract price of $39,000.

4.20    Regarding the Quincy project, Cat 5 and Interstate agree that various change orders increased the contract amount, and that Interstate did not pay the entirety of that

increased amount.

4.21    Regarding the Quincy project, Cat 5 claims Interstate failed to pay $9,370.98 to Cat 5; Interstate claims it paid all but $2,500, because "[t]he [S]ubcontract [Agreement] provide[d] that payment will be made to Cat 5 after Interstate … receives payment for Cat 5's work" and "[t]o date, Interstate … has not received payment from the main contractor on the change order."

4.22    Regarding the Quincy project, Interstate further claims that Cat 5 "failed to satisfactorily complete all of the work specified in the subcontract" and that Interstate "incurred costs amounting to at least $11,250, in order to satisfactorily complete the work Cat 5 was required to perform under the subcontract."

4.23    Regarding the Quincy project, Interstate alleges that "[a]fter accounting for Interstate['s] incurred costs to complete Cat 5's contractual obligations, Cat 5 has been overpaid by at least $11,250."

4.24    Regarding the Quincy project, Interstate further alleged that "ELS incurred costs to complete [Cat 5's] subcontracted work."  As a result, "ELS is now withholding payment from Interstate … on multiple projects to recover costs against Interstate[.]"

4.25    Regarding the Quincy project, Interstate alleges that because "[t]he claim between ELS and Interstate … has not yet been resolved," "the full value of that claim cannot yet be determined."

4.26    Regarding the Quincy project, Cat 5 alleged that Interstate "intentionally modified" work orders for the Quincy project as well.

4.27    Regarding the Quincy project, Cat 5 claims damage to its reputation and injury to its "business, trade and profession, and/or presumably will, as a natural and proximate consequence, occasion Cat 5 pecuniary loss."

4.28    Regarding the Quincy project, Cat 5 asserted claims for defamation and CPA violation against Interstate and implicitly alleged claims for breach of contract, quantum

meruit, and promissory estoppel. Interstate asserted counterclaims against Cat 5 for breach of contract and unjust enrichment for Interstate's overpayment as well as for damages related to its dispute with ELS.

4.29     Regarding the Lake Isabella project, the Subcontract Agreement was executed on September 6, 2019, and provided a contract price of $45,000.

4.30     Regarding the Lake Isabella project, Cat 5 alleges that various changes and work orders increased the contract amount.

4.31     Regarding the Lake Isabella project, Cat 5 claims that despite performing all its express and implied obligations under the Subcontract Agreement, Interstate refused to pay $9,370.98 to Cat 5.

4.32     Interstate's counterclaims against Cat 5 make no allegations regarding the Lake Isabella project.

4.33     With respect to the Lake Isabella project, Cat 5 implicitly alleged claims for breach of contract, quantum meruit, and promissory estoppel.

4.34     On March 23, 2020, Cat 5 initiated the Underlying Lawsuit against Interstate.

4.35     On May 6, 2020, Cat 5 filed an Amended Complaint in the Underlying Lawsuit.

4.36     On June 19, 2020, Interstate filed an Answer and Counterclaim in the Underlying Lawsuit.

4.37     Trial in the Underlying Lawsuit was set for May 10, 2021.

4.38     On November 23, 2020, Cat 5 filed a Second Amended Complaint in the Underlying Lawsuit.

4.39     On December 18, 2020, Interstate filed an Amended Answer to Cat 5's Second Amended Complaint in the Underlying Lawsuit.

4.40     Trial was then reset to September 20, 2021 in the Underlying Lawsuit.

4.41     On July 16, 2021, an Order of Continuance was issued in the Underlying

Lawsuit resetting trial to May 9, 2022.

B.     **The AIIC Policy**

4.42   AIIC issued Commercial General Liability Policy No. AES1057508 00 to Cat 5 for the policy period beginning on October 9, 2018 and ending on October 9, 2019. The policy was renewed for two successive periods thereafter: Policy No. AES1057508-01 (October 9, 2019, to October 9, 2020), and Policy No. AES1057508-02 (October 9, 2020, to October 9, 2021). All three policies are identical, and are collectively referred to as the "Subject Policy."

4.43   Subject to all terms, conditions, exclusions, and limitations, the Subject Policy provides commercial general liability coverage subject to a limit of $1,000,000 per occurrence, a $2,000,000 general aggregate limit, and a $2,000,000 products-completed operations aggregate limit. A copy of the Subject Policy is attached hereto as **Exhibit C**.

4.44   The Subject Policy is governed by Commercial General Liability Coverage Form (Form No. CG 00 01 12 07), which provides, in relevant part, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

4.45   The Subject Policy is governed by an Exclusion for "Damage to Property" (Form No. CG 00 01 12 07, Exclusion (j), "Damage to Property"), which provides, in relevant part, as follows:

> **SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**j. Damage to Property**

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

4.46    The Subject Policy is governed by an Exclusion for "Damage to Your Product" (Form No. CG 00 01 12 07, Exclusion (k), "Damage to Your Product"), which provides, in relevant part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

      **k.  Damage to Your Product**

          "Property damage" to "your product" arising out of it or any part of it.

4.47    The Subject Policy is governed by an Exclusion for "Damage to Your Work" (Form No. CG 00 01 12 07, Exclusion (l), "Damage to Your Work"), which provides, in relevant part, as follows:

    **SECTION I – COVERAGES**

    **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    \* \* \*

    **2.  Exclusions**

        This insurance does not apply to:

    \* \* \*

      **l.  Damage to Your Work**

          "Property damage" to "your work" arising out of it or any part of it and included in the "property-completed operations hazard".

          This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

4.48    The Subject Policy is governed by an Exclusion for "Damage to Impaired Property Or Property Not Physically Injured" (Form No. CG 00 01 12 07, Exclusion (m), "Damage to Impaired Property Or Property Not Physically Injured"), which provides, in relevant part, as follows:

    **SECTION I – COVERAGES**

    **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    \* \* \*

    **2.  Exclusions**

        This insurance does not apply to:

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

\* \* \*

**m. Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the sudden los of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

4.49    By endorsement (No. CG 20 33 07 04 "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required In Construction Agreement With You") (the "Additional Insured Endorsement"), the Subject Policy provides additional insured coverage to as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ADDITIONAL INSURED – OWNERS, LESSEES OR SUBCONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A**. **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the

additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

…

**2.** "Bodily injury" or "property damage" occurring after:

    **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

4.50    By endorsement (No. CG 20 37 07 04 "Additional Insured – Owners, Lessees or Contractors – Completed Operations") (the "Additional Insured Endorsement – Completed Operations"), the Subject Policy provides additional insured coverage to as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) or Organization(s): | Location and Description of Completed Operations |
|---|---|
| All persons or organizations where written contract with the Named Insured requires | As required per written contract. This form does not apply to your work on residential property. |

| | |
|---|---|
| additional insured completed operations coverage. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard."

4.51    By endorsement (No. NX GL 167 05 17 "Standard Additional Exclusions"), the Subject Policy contains an exclusion for "Suits Between Insureds," which precludes coverage as set forth, in part, below:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**STANDARD ADDITIONAL EXCLUSIONS**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following Exclusions are added to the policy:

…

**8. EXCLUSION – SUITS BETWEEN INSUREDS**

Section **I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions** are amended to add the following:

This insurance does not apply to:

Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury," "property damage," or "personal and advertising injury" resulting from, relating to, alleged by or brought between one Insured against another Insured under this policy.

4.52    By endorsement (No. IL 12 01 11 85 "Exclusion – Work Height Limitation"),

the Subject Policy contains an exclusion for "Work Height Limitation," which precludes coverage as set forth below:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – WORK HEIGHT LIMITATION:**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following Exclusion is added to **SECTION I – COVERAGES,** paragraph **2.** Exclusions of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

2. Exclusions

   This insurance does not apply to:

   Work Height

   (1) "Bodily Injury" or "property damage" arising out of or resulting from ongoing operations performed above a ground height of 3 stories or 36 feet on the exterior of any building or structure conducted by you or on your behalf for yourself or for others; or

   (2) "Bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of or resulting from "your work" performed above a ground height of 3 stories or 36 feet on the exterior of any building or structure.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

4.53    Cat 5 tendered defense of Interstate's counterclaims to AIIC pursuant to the Subject Policy.

4.54    AIIC agreed to defend Cat 5 subject to a full reservation of rights.

## V.  FIRST CAUSE OF ACTION

## DECLARATORY RELIEF DETERMINING WHETHER COVERAGE IS PRECLUDED IN WHOLE OR IN PART

5.1    AIIC realleges and incorporates herein paragraphs 1.1 through 4.54.

5.2     There is a genuine and bona fide dispute and an actual controversy and disagreement between AIIC and Defendants regarding whether AIIC has a duty to defend and indemnify Cat 5 against the claims asserted in the Interstate's counterclaims in the Underlying lawsuit.

5.3     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, AIIC in good faith requests that the Court declare the following:

    5.3.1   Coverage is precluded and/or limited pursuant to certain Policy exclusions, conditions, and/or limitations.

    5.3.2   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded, because Interstate's claims against Cat 5 do not allege "property damage," as that term is defined in the Subject Policy.

    5.3.3   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to the Subject Policy's Exclusion for "Damage to Property" (Form No. CG 00 01 12 07, Exclusion (j) "Damage to Property").

    5.3.4   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to the Subject Policy's Exclusion for "Damage to Your Product" (Form No. CG 00 01 12 07, Exclusion (k) "Damage to Your Product").

    5.3.5   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to the Subject Policy's Exclusion for "Damage to Your Work" (Form No. CG 00 01 12 07, Exclusion (l) "Damage to Your Work").

    5.3.6   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to the Subject Policy's Exclusion for "Damage to Impaired Property Or Property Not

Physically Injured" (Form No. CG 00 01 12 07, Exclusion (m) "Damage to Impaired Property Or Property Not Physically Injured").

5.3.7   Interstate is an insured under the Subject Policy pursuant to Form No. CG 20 33 07 04 ("Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required In Construction Agreement With You").

5.3.8   Interstate is an insured under the Subject Policy pursuant to Form No. CG 20 37 07 04 ("Additional Insured – Owners, Lessees or Contractors – Completed Operations").

5.3.9   Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to the Subject Policy's Exclusion 8 ("Suits Between Insureds") pursuant to Form No. NX GL 167 05 17 ("Standard Additional Exclusions").

5.3.10  Coverage for the claims asserted against Cat 5 in the Underlying Lawsuit is precluded and/or limited pursuant to Form IL 12 01 11 85 ("Exclusion – Work Height Limitation").

**REQUEST FOR RELIEF**

WHEREFORE, AIIC prays for judgment in its favor and against Defendant Cat 5 as follows:

A.   That this Court declare coverage for indemnity is excluded in full.

B.   That this Court declare coverage for defense is excluded in full.

C.   That this Court enter a declaratory judgment permitting and authorizing AIIC to withdraw its defense of Cat 5 in the Underlying Lawsuit.

D.   That AIIC be awarded such other and further relief as the Court deems just and appropriate.

DATED: November 4, 2021

BULLIVANT HOUSER BAILEY PC

By /s/ Michael A. Guadagno
Michael A. Guadagno, WSBA #34633
E-mail: michael.guadagno@bullivant.com
Attorneys for Plaintiff Associated Industries Insurance Company, Inc.

4877-3465-4209.1